# EXHIBIT 1

# BMW Financial Services NA, LLC
## Motor Vehicle Lease Agreement (Closed End) - New Jersey

### 1. PARTIES

| Lessor (Center) Name, Address and Telephone No. | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address (if Different) |
|---|---|---|
| OPEN ROAD BMW OF EDISON<br>731 US HIGHWAY 1<br>EDISON<br>NJ 08817<br>(732)985-4575 | ESMERALDA OSMANAJ<br>980 66TH STREET APT2R<br>BROOKLYN NY 11219<br><br>AMANDA AHMED SULTAN<br>283 QUINTARD ST<br>STATEN ISLAND NY 10305 | N/A<br><br>Billing Address (if Different)<br>N/A |

**2. Agreement to Lease.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above. Unless otherwise specified, "I," "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee. "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☒ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

**3. Date of Lease, Lease Term and Scheduled Maturity Date.** This Lease is entered into on 07/11/2020 for the scheduled Lease Term of 36 months with a Scheduled Maturity Date of 07/11/2023.

### 4. VEHICLE DESCRIPTIONS

**A. Leased Vehicle** ☒ New ☐ Demo ☐ Used
- Model Year: 2020
- Make & Model: BMW M8 CNV
- VIN: WBSDZ0C01LBM09466
- Odometer: 200
- Primary Use: ☒ Personal, Family or Household ☐ Business, Commercial or Agricultural

If the odometer reads in excess of 1,000 miles, the prior use of the Vehicle:
☐ Personal/Family ☐ Demonstrator ☐ Livery ☐ Unknown ☐ Police ☐ Prior Wreckage ☐ Rental
- Transmission: ☐ Auto ☐ Manual
- Brakes: ☐ Power ☐ Manual
- Steering: ☐ Power ☐ Manual
- ☐ A/C
- No. of Cylinders ___
- ☒ Monroney MSRP $157195
- ☐ Telephone ☐ CD Player ☐ N/A _____ (specify) ☐ N/A _____ (specify) ☐ N/A _____ (specify)

**B. Trade-In**
| Model Year | Make | Model | Agreed Upon Value | Prior Credit or Lease Balance | Net Trade-In Value |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |

### 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized in Section 9)
$ 13000.00

### 6. MONTHLY PAYMENTS
My first monthly payment of $ 1549.00 is due on 07/11/20 followed by 35 payments of $ 1549.00 due on the 11th day of each month. The total of my monthly payments is $ 55764.00

### 7. OTHER CHARGES (Not part of my Monthly Payments)
- A. Disposition Fee (if I do not purchase the Vehicle) $ 350.00
- B. N/A $ N/A
- TOTAL $ 350.00

### 8. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease Term)
$ 67565.00

### 9. AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**
| | |
|---|---|
| 1. Capitalized Cost Reduction | $ 4748.43 |
| 2. First Monthly Payment | $ 1549.00 |
| 3. Refundable Security Deposit | $ N/A |
| 4. Initial Title Fees | $ 325.00 |
| 5. Initial Registration Fees | $ N/A |
| 6. Initial License Fees | $ N/A |
| 7. Sales/Use Tax | $ 5031.15 |
| 8. Acquisition Fee (if not capitalized) | $ 925.00 |
| 9. Sales Tax on Capitalized Cost Reduction | $ 421.42 |
| 10. Supp. Title Fee | $ N/A |
| 11. N/A | $ N/A |
| 12. N/A | $ N/A |
| 13. N/A | $ N/A |
| TOTAL | $ 13000.00 |

**B. How the Amount Due at Lease Signing or Delivery Will Be Paid**
| | |
|---|---|
| 1. Net Trade-In Allowance | $ N/A |
| 2. Rebates and Noncash Credits | $ 3000.00 |
| 3. Amount to be Paid in Cash | $ 10000.00 |
| TOTAL | $ 13000.00 |

### 10. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

- **A. Gross Capitalized Cost.** The agreed upon value of the Vehicle ($136738.25) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount). $ 137636.25
- **B. Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost. – $ 4748.43
- **C. Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly Payment. = $ 132887.82
- **D. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment. – $ 84885.30
- **E. Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = $ 48002.52
- **F. Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. + $ 7761.48
- **G. Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. = $ 55764.00
- **H. Lease Payments.** The number of payments in my Lease. ÷ 36
- **I. Base Monthly Payment.** = $ 1549.00
- **J. Monthly Sales/Use Tax.** + $ N/A
- **K. N/A** + $ N/A
- **L. Total Monthly Payment.** = $ 1549.00

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**11. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of 30000 miles, at the rate of 30 cents per mile.

**12. Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle ("as is") at the Scheduled Termination of the Lease for its Residual Value of $ 84885.30. The purchase option price does not include official fees, such as those for taxes, title, registration and license/tags. See Section 28 for more information.

**Other Important Terms.** See the all pages of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, default charges, insurance, and any security interest, if applicable.

## 13. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | | |
|---|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ 136738.25 | L. Other DOC FEE | $ 699.00 |
| B. Initial Title, License & Registration Fees | $ N/A | M. Other OTHER CHARGES | $ 199.00 |
| C. Sales/Use Tax | $ N/A | N. Other N/A | $ N/A |
| D. Federal Luxury Tax | $ N/A | O. Other N/A | $ N/A |
| E. Sales Tax on Capitalized Cost Reduction | $ N/A | P. Other N/A | $ N/A |
| F. Maintenance Agreement | $ N/A | Q. Other N/A | $ N/A |
| G. Mechanical Breakdown Protection | $ N/A | R. Other N/A | $ N/A |
| H. Extended Warranty | $ N/A | S. Other N/A | $ N/A |
| I. Prior Credit or Lease Balance* | $ N/A | T. Other N/A | $ N/A |
| J. Acquisition Fee | $ N/A | U. Other N/A | $ N/A |
| K. Supp. Title Fee | $ N/A | | |

*Leave blank unless Lessor has paid prior credit or lease balance.

TOTAL $ 137636.25

## 14. ESTIMATED OFFICIAL FEES AND TAXES

$ 7751.57   This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term including any extensions of the Lease Term, whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed. The actual total of Official Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change. For some of these items, we may invoice you after the taxing authority has billed us, sometimes after the lease terminates.

## 15. OPTIONAL PRODUCTS AND SERVICES

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box, fill in all necessary information, initial below and I am accepted by the provider. Because these products and or services are not provided by the Lessor, I understand that I must pursue all related matters, including refunds, through the listed Provider. By initialing below, I agree that I have received and read a notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Center).

| ☐ Maintenance Agreement | N/A Provider | N/A Term (Months) | $ N/A Charge | N/A Lessee/Co-Lessee Initials |
| ☐ Mechanical Breakdown Protection | N/A Provider | N/A Term (Months) | $ N/A Charge | N/A Lessee/Co-Lessee Initials |
| ☐ N/A | N/A Provider | N/A Term (Months) | $ N/A Charge | N/A Lessee/Co-Lessee Initials |

**Mileage Allowance/Refund.**

30200 (Enter Mileage) I agree to this Mileage Allowance for the term of this Lease. My Total Monthly Payment and Residual Value for this Lease have been calculated, in part, by using this Mileage Allowance.

☐ If this box is checked, I have elected a high Mileage Allowance. I may receive a refund of N/A cents per unused mile for the unused miles between N/A miles and N/A miles, unless (a) the Vehicle is destroyed or stolen, (b) I default or terminate this Lease early, (c) I purchase the Vehicle, or (d) the refund is less than $1. Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

## 16. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:

☐ Remainder of the standard manufacturer's new vehicle warranty if the Vehicle is not a new vehicle.
☐ N/A

**UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."**

### 17. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 21. I affirm that such insurance is in force on the date of this Lease. I authorize Lessor and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the leased Vehicle.

| LIBERTY MUTUAL | | |
|---|---|---|
| Insurance Company | Policy No. | Coverage Verified (Center Employee's Initials) |
| N/A | N/A | (800) 290-7933 |
| Agent Name | Address | Phone No. |

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com; or faxed to 888-725-8456.

### 18. ADDITIONAL NEW JERSEY LEASE DISCLOSURES

TOTAL COST OF LEASE. Assuming I do not default on my obligations under this Lease and that I exercise the Purchase Option at End of Lease Term, the Total Cost of this Lease is $152450.30. This disclosure is required and calculated as specified by New Jersey law. The amount is calculated by adding: (1) The Amount Due at Lease Signing or Delivery (minus the First Monthly Payment and Refundable Security Deposit); plus (2) the Total of Monthly Payments; plus (3) any amounts imposed on me at the end of the Lease Term and (4) the Residual Value (the Purchase Option price). Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), my actual total cost may differ.

### MY OBLIGATIONS DURING THIS LEASE

**19. Vehicle Use.** I agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law or the terms of my insurance policy or this Lease; (b) to transport goods or people for hire, lease or rental to others; (c) outside the state where it was first titled for more than 30 days without your prior written consent; or (d) outside the United States, except for less than 30 days in Canada. I will not allow an uninsured person to operate the Vehicle at any time, or allow any third party, other than my spouse, to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way unless I first get your written consent.

**20. Vehicle Maintenance, Service, Repairs, and Reconditioning.** I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing my insurance agreement, damage repair estimate, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 33 below. You may inspect the Vehicle at any reasonable time.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

**21. Required Insurance.** During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000; (b) property damage liability for not less than $50,000; (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000; (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at least 30 days advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or provide insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. If valid automobile liability insurance or self insurance is available on any basis for me, additional authorized driver(s) or any other driver and such insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by passenger while riding in or on or getting in or out of Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/ Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP and/or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/UIM limits in excess of the minimum limits required by law.

**22. Registration, Titling, and Taxes.** I agree to pay registration, title, license, inspection fees and other official fees and taxes in connection with the Vehicle when due. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 22 are in addition to any remedies you may have pursuant to Section 24.

If I move to another location during the Lease Term or it becomes necessary for you to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**23. Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets.** If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of $30 or 5% of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a $30 service charge per item when I am billed.

If you receive notice of any third-party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third-party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third-party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and

all costs you incur associated with my failure to pay such fines, charges or traffic tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 23 are in addition to any remedies you may have pursuant to Section 24.

**24. Default and Remedies.** I will be in default under this Lease if:
(a) I fail to make a Monthly Payment when due;
(b) I fail to maintain the required insurance;
(c) I fail to return the Vehicle at the end of the Lease term;
(d) I fail to keep any of my promises under this Lease;
(e) I abandon the Vehicle;
(f) I or a guarantor become(s) insolvent or die(s); or
(g) Any information in my credit application or a guarantor's credit application is false or misleading.

If I am in default, following any applicable statutory right to cure, you may do any or all of the following:
(a) Terminate this Lease and my rights to possess and use the Vehicle;
(b) Take possession of the Vehicle by any method permitted by law;
(c) Pursue any other remedy permitted by law;
(d) Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days;
(e) Require that I pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) the amount by which the Adjusted Lease Balance (explained in Section 31) exceeds the Realized Value of the Vehicle (Section 32); plus (4) all of your expenses for taking these actions, including, but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle; plus (5) all fees and costs of collections, including reasonable attorneys' fees, court costs, interest, and other related expenses for all losses you incur in connection with my default of this Lease. Furthermore, if I do not pay these amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay;
(f) If the vehicle has an electronic tracking device, I agree that you may use the device to find the vehicle.

**25. Vehicle Loss or Damage.** I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or confiscated by a police or other governmental agency and subject to forfeiture. In that event, you reserve the right to terminate this Lease and my liability will either be: (a) calculated under Section 26 below, if I am in compliance with my insurance obligations; or (b) calculated under Section 24 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 20 above at my expense.

**26. "Gap Amount" Waiver.** If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company. However, I will be obligated to pay you: (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss, I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 24.

**27. Power of Attorney.** I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under this Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with same.

## ENDING MY LEASE

**28. Purchase Option.** I have an option to purchase the Vehicle AS-IS, WHERE-IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.D). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 31). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees, unpaid Monthly Payments or late charges.

**29. Vehicle Return.** If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excess wear and use and/or excess mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

**30. Scheduled Termination of the Lease.** Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you: (a) a **$350** Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and Excess Wear and Use charges (Section 11), plus (d) any official fees or taxes assessed or billed in connection with this Lease.

**31. Early Termination of the Lease.** I may terminate this Lease at any time by purchasing the Vehicle (Section 28) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

**Option A.** I agree to pay the sum of : (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Mileage Charges; plus (5) a **$350** Disposition Fee.

**Option B.** I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) a **$350** Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 32). However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option A, you will waive the difference and my liability will be capped at Option A.

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed and/or billed after the Lease terminates.

The "Adjusted Lease Balance" is determined at any given time by subtracting the scheduled Base Monthly Payments received through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge received through the early termination date. The Rent Charge is calculated according to the "constant yield method". Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due dates.

**32. Realized Value of the Vehicle.** For the purpose of calculating my Early Termination liability (Section 31), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as set forth in Section 25 above, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain, at my

own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal within 10 days after the Vehicle is returned to you, the appraisal will be the final and binding Realized Value.

**33. Excessive Wear and Use.** I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to:
(a) inoperative electrical or mechanical parts;
(b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c) non-functioning, scratched, cracked, pitted or broken glass or lights;
(d) missing equipment, parts, accessories or adornments;
(e) torn, damaged, burned, or stained interior;
(f) repair of any damage that makes the Vehicle unlawful or unsafe to drive;
(g) damage due to installation or removal of non-manufacturer, after-market or replacement parts;
(h) damage, including damage to the Vehicle due to failure to maintain the Vehicle in accordance with Section 20; or
(i) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quantity or quality as those delivered with the Vehicle.

I may obtain at the end of the lease term, at my expense, a professional appraisal of the amount required to repair or replace parts or the amount which any excessive wear and use reduces the value of the Vehicle. This professional appraisal shall be performed by an independent third party agreed to by you and me, which appraisal shall be final and binding on us. If I fail to pay any excess wear and use, excess mileage or other lease end charges within thirty days of the due date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease end charges, including but not limited to excess wear and use and excess mileage fees.

## ADDITIONAL INFORMATION

**34. Indemnification.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle, including claims made under the strict liability doctrine.

**35. Refundable Security Deposit.** You may use some or all of my Security Deposit to pay any amount I owe under this Lease at the end of my Lease Term or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under this Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

**36. Assignment.** You may assign your interests under this Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

**37. Notices.** All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

**38. Other Terms.** Waiver. You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. Severability. Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. Joint Liability. If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. Choice of Law. Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where I sign it. In the event that both parties agree not to arbitrate in accordance with Section 39 below, any dispute shall be brought in a court located in the state of Lessor's place of business. Entire Agreement. This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. Maintaining Payments. I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. Lessee's Warranties. I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand. Personal Property. Lessor shall not be responsible at any time for any personal property in the Vehicle. Escheatment. If for any reason you need to escheat any of my funds to an unclaimed funds department, you may retain such fee as is allowable per state law.

**39. ARBITRATION CLAUSE**

**PLEASE REVIEW - IMPORTANT - AFFECTS MY LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any class claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors or assigns, which arise out of or relate to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action or other mass action. I expressly waive any right I may have to arbitrate a class action. I may choose the following arbitration organization and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com), or any organization that I may choose subject to your approval. I may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which I reside unless the Lessor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. The arbitrator shall be empowered as permitted under the Rules of the National Arbitration Forum to award equitable relief as well as legal relief, to provide all temporary and/or provisional remedies and to enter equitable orders that will be binding upon the parties. Any award or dispositive order of the arbitrator may be entered as a judgment in any court having jurisdiction. We agree that either you or I may, without objection, request an expedited hearing under the applicable rules.

You will advance my filing, administration, service or case management fee and my arbitrator or hearing fee all up to a maximum of $1500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration; however, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which this Lease was executed.

You and I may retain any rights to self-help remedies, such as repossession. Neither you nor I waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

Notwithstanding any other provision for notice contained in the Lease, any arbitration claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my claim is against the Lessor, I agree that notice of my claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my claim at the addresses indicated herein.

By signing below, I acknowledge that:
- This Lease is completely filled out;
- I have no ownership rights in the Vehicle unless and until I exercise my option to purchase the Vehicle;
- I have read all pages of this Lease carefully and agree to all of its terms; and
- I have received a completely filled in copy of this Lease.

NOTICE: THE LESSEE AND LESSOR SHALL BE ENTITLED TO REVIEW THIS LEASE AGREEMENT FOR ONE BUSINESS DAY BEFORE SIGNING THE AGREEMENT.

X _Esmeralda Osmany_
Lessee

X _[signature]_
Lessee

By (Print Name & Title if Corporation)

By (Print Name & Title if Corporation)

### 41. GUARANTY

I jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against me without first proceeding against the Lessee. My liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to notices of every kind, including rights to demand and presentment. I agree to pay all expenses (including reasonable attorney's fees and legal expenses) you incur if you have to enforce this Guaranty.

Guarantor's Signature: X N/A

Guarantor's Signature: X N/A

N/A
Name

N/A
Name

N/A
Address

N/A
Address

### 42. LESSOR'S ACCEPTANCE AND ASSIGNMENT

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Center Agreement between Lessor and BMW FS.

Lessor Name OPEN ROAD BMW OF EDISON       Signature of Authorized Representative _[signature]_

2206L (03/13) (NJ)                                                                                                 6 of 6